UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILYON DYNAMICS LTD., et al., <br> Plaintiffs, <br> v. <br> KINGS FORTUNE PTE. LTD., <br> Defendant. | Case No. 24-cv-04581-NC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Re: ECF 14, 15, 16, 19, 20, 25, 26 |

Plaintiffs Ilyon Dynamics Ltd. and BoomBox Games Ltd. bring three federal copyright and trademark claims against Defendant Kings Fortune Pte. Ltd. Plaintiffs allege Defendant copied protected visuals and trademarks from their mobile video game Triple Match 3D for use in Defendant's own mobile game Happy Match Café. Defendant moves to dismiss for failure to state a claim, arguing BoomBox's copyright is invalid, the allegedly infringed game elements are not copyrightable, and Ilyon's trademark claims fail to allege a likelihood of confusion among consumers. For the reasons below, the Court finds Plaintiffs adequately allege each claim and DENIES Defendant's motion to dismiss.

**I.   BACKGROUND**

The Court takes the following facts as true for the purposes of this motion. Ilyon is a mobile games developer. ECF 1 (Compl.) ¶ 11. Ilyon owns valid U.S. trademarks, Nos. 5580711 and 5804788, in two marks registered in 2018 and 2019, respectively, that together make up the Ilyon logo. Compl. ¶¶ 17, 19.

1    BoomBox is a subsidiary of Ilyon and, in or around 2021, created the casual mobile video game Triple Match 3D.  Compl. ¶¶ 10, 12–13.  BoomBox owns a valid U.S. Copyright, No. PA 2-421-883, that has been effective since July 26, 2023, for Triple Match 3D.  Compl. ¶¶ 13–14, Ex. A.  Ilyon permits BoomBox to use its trademarks, and therefore its logo.  Compl. ¶ 19.  Since February 2022, Plaintiffs have "published, distributed, and advertised" the copyrighted work "by making [it] available for download on the Android and iOS platforms via the Google Play and App Stores."  Compl. ¶¶ 13, 15.  In the copyrighted work, players match three identical objects, "such as a mug of hot chocolate, an Easter egg, a cup of coffee, and a mug bearing Plaintiff Ilyon's ILYON Logo" to clear the board.  Compl. ¶¶ 16–17.

On or around January 2023, Defendant "published, distributed, and advertised, or caused to be published, distributed, and advertised" via the Google Play and App Stores a "three-dimensional object matching game" called Happy Match Café.  Compl. ¶ 22.  The objects to be matched in Defendant's work include a mug of hot chocolate, an Easter egg, a cup of coffee, and a mug with Ilyon's logo.  Compl. ¶ 24.  Defendant's game also includes "similar tutorials, similar items and color schemes on the same levels, similar 'Lives Bank' design, similar leaderboard design, similar 'Teams' user interface, [and] similar 'Star Challenge' pop-up" as BoomBox's game.  Compl. ¶¶ 18, 26, Ex. B.

Plaintiffs filed a complaint, Compl., which Defendant moves to dismiss, ECF 14, 15 (Mot.).  Plaintiffs filed an opposition, ECF 19 (Opp'n), and Defendant replied, ECF 25 (Reply).  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  ECF 8, 30.

**II.    LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

Defendant moves to dismiss each of Plaintiffs' three claims under the Lanham Act for copyright infringement, trademark infringement, and for false designation of origin and unfair competition. Mot. The parties also dispute whether Defendant effectively moves to dismiss or strike Plaintiffs' prayer for damages and/or punitive damages. *See* Mot. 4–5; Opp'n 20; Reply 10–11.

#### A. Copyright Infringement (Claim One)

Plaintiff BoomBox brings a claim for copyright infringement. Compl. ¶¶ 34–39. "To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (citation omitted). The parties dispute whether BoomBox plausibly alleges both elements. Specifically, Defendant argues BoomBox cannot establish ownership of the copyrighted work due to an inaccuracy on the copyright's certificate of registration, and that the allegedly infringed aspects of BoomBox's work are not copyrightable. The Court disagrees.

##### 1. Ownership

Registration of a copyright is a prerequisite to filing suit for infringement. 17

U.S.C. § 411(a); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).  "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  However, a certificate of registration that contains inaccurate information cannot support a suit for infringement if "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).

Defendant argues BoomBox fails to establish ownership of the copyrighted work because the certificate of registration states the work was completed in 2015, but the complaint alleges the work was created "[i]n or around 2021."  Compl. ¶ 13, Ex. A.  Under 17 U.S.C. § 411(b)(1), this inaccuracy, alone, is insufficient to undermine the validity of the copyright.  First, Defendant focuses on the inaccurate date on the certificate of registration, but it is unclear if the inaccurate date appeared on BoomBox's *application* for the copyright.  *See* 17 U.S.C. § 411(b)(1)(A); *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 779 (E.D. Cal. 2021) (ordering party to explain "what information was presented as part of its registration *application*" (emphasis added)).  Second, it is not clear that BoomBox knew of any inaccuracy on the application.  *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 185, 187–88 (2022) (holding that "in this context, the word 'knowledge' means actual, subjective awareness of both the facts and the law").

The validity of BoomBox's copyright registration is therefore an issue more appropriate for determination at summary judgment when evidence may "lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information" on a copyright application.  *See H&M*, 595 U.S. at 187–88; *S.O.S.*, 886 F.2d at 1086 ("The presumptive validity of the certificate may be rebutted and defeated on summary judgment."); *Yellowcake*, 522 F. Supp. 3d at 779 ("[I]t seems unlikely that the issue of knowledge or inadvertence will be able to be decided before either a summary

4

judgment motion or a trial."). The Court rejects Defendant's invitation to "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration" until facts concerning BoomBox's application and knowledge are before the Court. *See* Mot. at 7; 17 U.S.C. § 411(b)(2).

The Court therefore declines to find BoomBox's copyright invalid. The certificate of registration is sufficient to allege BoomBox's ownership of the copyright.

### 2. Copying

Where, as here, the complaint offers no allegations of "direct evidence of copying, a plaintiff may prove this element through circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work." *Urban Outfitters*, 853 F.3d at 984–85; *see Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (noting the access and substantial similarity prongs at this step are also referred to as "copying" and "unlawful appropriation," respectively). BoomBox adequately alleges access and substantial similarity, and thus copying.

#### a. Access

A plaintiff can establish access to the copyrighted work using circumstantial evidence that "the plaintiff's work has been widely disseminated." *Urban Outfitters*, 853 F.3d at 985 (citation omitted). The infringing and copyrighted works must also show "similarities probative of copying" rather than of "coincidence, independent creation, or prior common source." *Skidmore*, 952 F.3d at 1064 (citations omitted). These similarities "may be based on the overlap of unprotectable as well as protectable elements." *Id.*

Defendant argues BoomBox does not sufficiently allege that Defendant copied BoomBox's work, but does not argue that it lacked access to the copyrighted work. *See* Mot. 3–4. At most, Defendant seems to merely express dissatisfaction with the standards

for establishing access using circumstantial evidence. *See* Mot. 3–4.[1]

Regardless, BoomBox adequately alleges access under controlling law. The complaint alleges Defendant "intentionally copied" the copyrighted work. Compl. ¶ 23. BoomBox also alleges Defendant had access to the copyrighted work "as a result of [its] widespread dissemination," and that "striking similarities" exist between the two works' gameplay, user interfaces, and graphics. Compl. ¶¶ 23– 24. Defendants do not challenge the widespread availability of the work or the similarities between the two works, seemingly acknowledging the "convergence of product features" between the two games. *See* Mot. 4. As a result, BoomBox sufficiently alleges access.

### b. Substantial Similarity

The Ninth Circuit uses a two-part test to determine whether the allegedly infringing work is substantially similar to the copyrighted work: the extrinsic test and the intrinsic test. *Skidmore*, 952 F.3d at 1064. At the pleading stage, courts apply only the extrinsic test. *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 941 (9th Cir. 2023). The extrinsic test "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id.* (citation omitted). "Substantial similarity is usually an extremely close issue of fact." *Urban Outfitters*, 853 F.3d at 985 (citation omitted); *see also Hanagami*, 85 F.4th at 945 ("[I]t is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage.").

Defendant's main argument is not that BoomBox's allegations fail to pass the extrinsic test, but that the aspects of the copyrighted work that Defendant allegedly infringed are neither protected by BoomBox's copyright nor copyrightable. Mot. 2–4.

"Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.'"

---

[1] The Court notes that Defendant's argument and use of the term "copying" may be confused by the varying use of "access" and "copying" in caselaw to describe this step of analysis. *See supra* III(A)(2).

*Skidmore*, 952 F.3d at 1064 (citation omitted). Copyright protection extends only to expression, "not the idea underlying that expression." *Hanagami*, 85 F.4th at 941. As such, copyright protections do not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery" embodied in an original expressive work. 17 U.S.C. § 102(b).

Defendant's argument is unpersuasive because it relies on a misreading of the allegations in Plaintiffs' complaint. Specifically, Defendant contends that BoomBox's copyright infringement claim fails because BoomBox only alleges infringement of "gameplay mechanics or design concepts," which are not subject to copyright protections, and does not allege infringement of any code from the copyrighted work. Mot. 3–4; Reply 5. But, drawing all reasonable inferences in favor of Plaintiffs, the complaint alleges that Defendant copied the *visuals* in the copyrighted work—namely, assets (graphic visuals of objects), color schemes, and the appearance of certain interfaces. *See* Compl. ¶¶ 26, 28 (discussing similarities in "the overall look and feel" of the games), 31 (alleging copying of "the audiovisual work" and "texts embodied" in the game), Ex. B; *see* Opp'n 15. BoomBox therefore does not, as Defendant argues, allege infringement because Defendant's game is also "triple-match-themed" or involves "common elements in many puzzle games," but rather because Defendant's implementation of the same game procedures *looks* the same as in the copyrighted work. Mot 3, Reply 7.

Defendant's arguments and cited case authority do not support the idea that the allegedly infringed visuals are not copyrightable. In *Oracle America, Inc. v. Google Inc.*, the Federal Circuit, applying Ninth Circuit precedent, observed, "It is well established that copyright protection can extend to both literal and non-literal elements of a computer program. [citation omitted]. The literal elements of a computer program are the source code and object code. . . . The non-literal components of a computer program include, among other things, the program's sequence, structure, and organization, *as well as the program's user interface*." 750 F.3d 1339, 1355–56 (Fed. Cir. 2014) (emphasis added). The *Oracle* court explained that "whether the non-literal elements of a program 'are

7

1  protected depends on whether, on the particular facts of each case, the component in
2  question qualifies as an expression of an idea, or an idea itself.'" *Id.* at 1356. Defendant
3  offers no explanation for why the allegedly infringed visuals constitute ideas themselves,
4  rather than expressions of ideas, which in any case is likely a question of fact. Instead,
5  Defendant argues that *Oracle* held only the non-literal elements *of code* are protected
6  under copyright because neither "literal nor non-literal elements are separable from the
7  underlying coding of the computer program." Reply 5. Defendant offers no authority for
8  this interpretation or to justify confining *Oracle* to the facts of that case.

9  In fact, Defendant cites to caselaw recognizing that audiovisual and "expressive
10  elements" of games are "copyrightable, including game labels, design of game boards,
11  playing cards and graphical works," even though game mechanics and rules are not. *See*
12  Reply 7; *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 830 (S.D.
13  Tex. 2016) (quoting *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 404
14  (D.N.J. 2012)). In *Tetris Holding*, the court rejected arguments similar to those raised by
15  Defendant that "*any and all expression* related to a game rule or game function is
16  unprotectible." *See* 863 F. Supp. 2d at 404–05 (emphasis in original). Defendant also
17  appears to concede as much by recognizing BoomBox's copyright "protects audiovisual
18  works" and "texts embodied in the video game." Mot. 2–4; *see also* Reply 5 ("Instead,
19  Plaintiffs relied on allegations that the audiovisuals in the two games are similar to make a
20  copyright infringement claim.").

21  Defendant raises for the first time in its reply brief that the Court should use the
22  abstraction-filtration-comparison test to determine whether the allegedly infringed non-
23  literal elements of BoomBox's game are copyrightable. *See* Reply 6 (citing *Oracle*, 750
24  F.3d at 1357 (explaining the test as endorsed by the Ninth Circuit)). Defendant does not
25  offer its own analysis using this test. *See* Reply 6–7. The Court therefore declines to
26  conduct the abstraction-filtration-comparison test now, particularly given that doing so
27  would require additional facts that are not yet before the Court at the motion to dismiss
28  stage. *See Oracle*, 750 F.3d at 1357–58; *see also Padilla v. City of Richmond*, 509 F.

8

Supp. 3d 1167, 1180 (N.D. Cal. 2020) ("As a general rule, courts do not consider arguments raised for the first time on reply.").

Because BoomBox alleges infringement of protectable aspects of the copyrighted work, the Court must next assess whether BoomBox "plausibly allege[s] substantial similarity between the original work and the allegedly infringing work" under the extrinsic test. *See Hanagami*, 85 F.4th at 935, 945. Defendant does not argue that its allegedly infringing visuals are not substantially similar to the copyrighted work. Even so, the Court concludes BoomBox sufficiently alleges substantial similarity through side-by-side visual comparisons of graphics and interfaces across the two works. Compl. ¶¶ 17, 24, Ex. B; *see Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 964 n.6 ("We generally consider exhibits attached to a complaint and incorporated by reference to be part of the complaint."). BoomBox points to "specific, objective" details of both works, including, for example, similar graphics of a small red mug with brown liquid and one orange and one pink marshmallow. Compl. ¶ 24; *see Kev & Cooper, LLC v. Furnish My Place, LLC*, 20-cv-01509-MCS-KES, 2021 WL 6618745, at *3 (C.D. Cal. Nov. 28, 2021) (citation omitted).

The Court finds it unnecessary to consider each allegedly infringed element in isolation, particularly given that Defendant does not do so. Although Defendant does argue that any infringement of the graphic of a mug bearing the Ilyon logo, specifically, is de minis and therefore not actionable, it raises this argument for the first time in its reply brief, so the Court disregards it. *See Padilla*, 509 F. Supp. 3d at 1180.

Because BoomBox plausibly alleges ownership of a valid copyright and both elements of copying, it plausibly alleges a claim for copyright infringement.

**B.  Trademark Infringement (Claim Two) and False Designation of Origin and Unfair Competition (Claim Three)**

Plaintiff Ilyon alleges Defendant used two of Ilyon's protected trademarks in commerce and without authorization by showing Ilyon's logo on a graphic of a coffee mug in Defendant's game. Compl. ¶¶ 40–59. As a result, Ilyon brings claims for trademark infringement and for false designation of origin and unfair competition.

9

1  To state a claim for trademark infringement under § 1114 of the Lanham Act, a
2  plaintiff must establish "(1) that it has a protectible ownership interest in the mark; and (2)
3  that the defendant's use of the mark is likely to cause consumer confusion." *Network*
4  *Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)
5  (citation omitted); 15 U.S.C. § 1114.  To state a claim for false designation of origin and
6  unfair competition under § 1125(a) of the Lanham Act, a plaintiff must allege the
7  defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or
8  misleading description, or representation of fact, which (3) is likely to cause confusion or
9  misrepresents the characteristics of his or another person's goods or services." *Freecycle*
10 *Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); *Brookfield Commc'ns, Inc. v. W.*
11 *Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); 15 U.S.C. § 1125(a).

12  For both claims, Defendant challenges only whether Ilyon adequately alleges
13 likelihood of confusion.  Mot. 7–9.  To determine the likelihood of confusion when
14 evaluating a claim under the Lanham Act, courts ask "whether a 'reasonably prudent
15 consumer' in the marketplace is likely to be confused as to the origin of the good or
16 service bearing one of the marks." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027
17 (9th Cir. 2024).  In doing so, courts consider the eight *Sleekcraft* factors: "(1) strength of
18 the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual
19 confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to
20 be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8)
21 likelihood of expansion of the product lines." *Id.* (quoting *AMF Inc. v. Sleekcraft Boats*,
22 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking*
23 *Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)).  These factors are illustrative,
24 flexible, non-exhaustive, and case specific.  *Network Automation*, 638 F.3d at 1145–46.
25 Nonetheless, the Ninth Circuit has emphasized the importance of considering the similarity
26 of the marks, the proximity or relatedness of the goods, and the marketing channels used,
27 including whether the two companies are direct competitors.  *See id.* at 1146; *Brookfield*,
28 174 F.3d at 1054.

1       Applying the most important *Sleekcraft* factors here, the Court finds Ilyon
2  adequately pleads a likelihood of confusion from Defendant's alleged use of Ilyon's
3  trademarks. First, as to the similarity of the marks on the mugs in the two games, Ilyon
4  alleges the marks are not just similar, but identical—that Defendant uses Ilyon's
5  trademarks. Compl. ¶¶ 43, 52, 54–55 ; *see* Opp'n 19; *Yelp, Inc. v. ReviewVio, Inc.*, No.
6  23-cv-06508 WHA, 2024 WL 2883668, at *6 (N.D. Cal. June 6, 2024). Second, as to the
7  relatedness of the goods, Ilyon alleges both games are "three-dimensional object matching
8  game[s]" and "substantially similar," sharing both gameplay features and visuals. Compl.
9  ¶¶ 16, 22, 24, 26. Defendant acknowledges both games are among "several similar triple-
10 match-themed games on the market." Reply 7.

11      Third, as to shared marketing channels, Ilyon alleges that "[l]ike the Copyrighted
12 Work, the Infringing Work has been published, distributed, and advertised in the United
13 States by making the Infringing Work available for download on the Android and iOS
14 platforms via the Google Play and App Stores." Compl. ¶ 22. Ilyon also alleges that
15 revenue for its game decreased "by an amount approximately commensurate with the
16 revenue generated by" Defendant's game once it launched. Compl. ¶ 29. Where goods are
17 direct competitors, as Ilyon effectively alleges here, courts have often required fewer
18 *Sleekcraft* factors and lower degrees of similarity between the marks and products at the
19 pleading stage. *See Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 670 F. Supp.
20 3d 946, 951–52 (N.D. Cal. 2023); *LegalForce Rapc Worldwide P.C. v. MH Sub I, LLC*,
21 No. 24-cv-00669 WHA, 2024 WL 3238124, at *2 (N.D. Cal. June 27, 2024). Defendant's
22 argument that "the fact that basically all games are available for download on platforms
23 like the Apple Store or Google Play does not help establish the existence of confusion" is
24 well-taken, especially given that Plaintiff does not provide allegations about the
25 advertising and marketing of each game as directed to consumers, as opposed to their
26 channels of distribution and download. Reply 10; *see LegalForce*, 2024 WL 3238124, at
27 *4. "Still," accepting the allegations as true, "that both use the same marketing channel
28 plausibly supports, rather than dispels, concerns about confusion." *LegalForce*, 2024 WL

11

3238124, at *4.  Moreover, the Court cannot consider Defendant's remaining arguments that the games' icons within the app stores look different, which precludes any confusion between the games at the time of download, or that any use of Ilyon's trademarks in Defendant's game is "inconspicuous."  *See* Reply 9–10.  Both would require the Court to improperly consider information outside of the complaint and involve questions of fact.

Finally, Ilyon alleges that Defendant's use of its trademarks "is likely to cause confusion, or to cause mistake, or to deceive consumers" into believing Defendant's game is "sold, authorized, endorsed, [] sponsored" or "in some way affiliated with" Ilyon.  Compl. ¶¶ 45, 54, 56; *see Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 966–67 (N.D. Cal. 2015) (finding similar allegations, standing alone, sufficient to plead likelihood of confusion).  Taken together, Ilyon's allegations adequately plead likelihood of confusion at the motion to dismiss stage, especially considering "[l]ikelihood of confusion is typically a question of fact."  *Automated Pet Care*, 670 F. Supp. 3d at 950.

### C. Prayer for Damages

Defendant's motion only briefly addresses Plaintiffs' prayer for damages.  First, Defendant concludes its argument that the allegedly infringed elements of Plaintiffs' work are not copyrightable by stating "the pleadings regarding damages are equally incomplete and perplexing."  Mot. 4.  Second, Defendant argues "[t]he alleged similarity of minor game elements is too remote to serve as a valid basis for the claimed damages, which should be deemed unfounded and insufficient, thereby also constituting the Plaintiff's [*sic*] failure to state a claim."  Mot. 5.

In response, Plaintiffs argue that Defendant's motion is not the proper vehicle to dismiss or strike damages.  Opp'n 20.  Defendant, in its reply brief, provides the standard for a Court to strike matter from a pleading under Rule 12(f) and argues the Court could alternatively consider "Defendant's request to strike the claim of punitive damages" under Rule 12(b)(6).  Reply 10–11.

The Court does not consider Defendant's two remarks concerning damages in its motion a "request to strike" Plaintiffs' prayer for punitive damages.  The motion nowhere

uses the word "strike" or references punitive damages, specifically.  Nor does the motion provide any argument applying Rule 12(f)'s standard to Plaintiffs' prayer.  *See* Fed. R. Civ. P. 12(f).  Again, the Court will not consider arguments raised for the first time in a reply brief.  *See Padilla*, 509 F. Supp. 3d at 1180.  Defendant's motion to strike or dismiss Plaintiffs' prayer for damages or punitive damages, to the extent Defendant so moved, is DENIED.

## IV. CONCLUSION

The Court DENIES Defendant's motion to dismiss Plaintiffs' complaint.  The Court also DENIES without prejudice both parties' requests for judicial notice, ECF 20 and ECF 24, and evidentiary objections, Opp'n 12 n.1 and ECF 26, because the Court did not consider those materials when reviewing the parties' briefs and writing this Order.

Defendant must file an answer to Plaintiffs' complaint by March 11, 2025.

**IT IS SO ORDERED.**

Dated:  February 25, 2025

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

13